The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Flozell Jefferson BEASLEY, Defendant-Appellant.

No. 77–877.

Colorado Court of Appeals, Div. I.

Dec. 28, 1979.

Rehearing Denied Jan. 31, 1980.

Certiorari Denied March 31, 1980.

J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Susan P. Mele-Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Terri L. Brake, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Judge.

Flozell Beasley appeals his conviction of attempted first degree murder, second degree kidnapping, and first degree assault. Beasley entered pleas of not guilty by rea-

son of insanity and not guilty. Following the verdict of the jury that he was sane at the time of the offenses, a trial was held on his not guilty plea. Beasley asserts that numerous errors were committed during the course of both trials. We reverse.

The People presented evidence that Beasley shot Jesse Jordan in the jaw in a dispute about drugs sold by Jordan. Then he kidnapped Jordan's female companion and took her on an all-night ride which culminated in his shooting her five times.

## I.

### The Sanity Trial

Beasley first contends that, based upon the facts presented at the sanity trial, the trial court was required to submit separate verdict forms to the jury as to each count. We agree.

■ Insanity at the time of the alleged offense is a complete defense to a criminal charge. Section 16–8–101, C.R.S.1973 (1978 Repl.Vol. 8). Where the acts upon which the charges are based are separated by time and location, a finding as to a defendant's sanity at the time of one act is not conclusive as to his sanity at the time of another act. *People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972); *People v. Gillings*, 39 Colo. App. 387, 568 P.2d 92 (1977).

■ Here, the assault of Jordan occurred approximately six hours prior to the shooting of the female victim. She testified that, during those six hours, they were almost continuously driving. The acts were separated by time and location so that a finding of sanity as to one act would not preclude a different finding as to the later ones.

Furthermore, the defendant's medical expert testified that one of the indications of Beasley's insanity was his self-righteous vindictiveness toward drug dealers such as Jordan. The jury could have concluded that Beasley was insane as to the assault against Jordan, but perhaps not as to the attacks upon his companion.

■ Beasley next contends that the trial court erred further in allowing the jury to consider the testimony of Drs. Miller and Afton. He argues that the district attorney elicited the opinion of Miller regarding Beasley's sanity without the proper statutory foundation. We hold that the foundation for the testimony was sufficient.

Miller testified that the defendant knew right from wrong and did not suffer from an irresistible impulse at the time of the offense. He further opined that the defendant was sane as defined in the Colorado statute. Miller had testified at numerous insanity trials, and his familiarity with the statute was not tested on cross-examination by defendant's counsel. Under these circumstances, his statement that his opinion was based upon the statute sufficiently demonstrated the foundation for his testimony that the defendant was sane.

■ Beasley also alleges that Miller's testimony was inadmissible because it was based in part upon police offense reports and a five-year-old presentence report. We disagree. The modern view is that an expert may base his opinion on facts or data made known to him before the hearing, which need not be admissible in evidence, provided the information is of a type reasonably relied upon by experts in the particular field in forming their opinions. *Good v. A. B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977); Fed.R.Evid. 703. *See also* Colorado Rules of Evidence (CEF) 703 (effective January 1, 1980).

Beasley also alleges that the testimony of another prosecution psychiatrist, Dr. Afton, was inadmissible because the witness based his conclusions that Beasley was sane, in part, on a prior report by Miller which Afton had examined. We agree.

■ While a doctor is not disqualified from expressing his opinion concerning the sanity of the defendant merely because he had some information from a source other than his own examination, he may not base his conclusions on that information. *Garrison v. People*, 158 Colo. 348, 408 P.2d 60 (1965). An expert's opinion must not be predicated, in whole or in part, on opinions of others, expert or lay. *O'Brien v. Wallace*, 137 Colo. 253, 324 P.2d 1028 (1958).

■ Here, Afton testified that, for the purposes of saving time, he did not repeat

certain questions asked by Miller about which Miller had reported reasonably normal results. Beasley was asked by Miller to perform simple arithmetical calculations, to explain proverbs, and to count backwards. Afton testified that he relied on Miller's analysis of Beasley's responses in forming his opinion that Beasley was sane.

Dr. Whittington, another psychiatric witness, testified that his conclusion that Beasley was insane was based in part on his inability to perform simple arithmetical calculations, his understanding of proverbs, and his understanding of the similarities between pairs of objects. These were precisely those portions of the examination not conducted personally by Afton. Since Afton's opinion was essentially the same as the testimony of Miller and that of another psychiatrist who testified for the People, his testimony buttressed the testimony of the other prosecution psychiatrists without his having conducted or independently analyzed key portions of the examination.

■ Beasley also alleges error in the cross-examination of Whittington. Over the objection of defense counsel, the trial court permitted the district attorney to question Whittington regarding a theory elaborated in a text upon which he did not rely in arriving at his opinion. He argues that such examination is not permissible unless the expert relied upon the treatise. We disagree.

■ While Beasley argues that traditional position, the modern rule is that an expert may be cross-examined using learned treatises even though he did not rely upon them in reaching his conclusions. Fed.R.Evid. 803(18). *See also* Colorado Rules of Evidence (CRE) 803(18) (effective January 1, 1980). Beasley also contends that no foundation was laid for asking the witness if he agreed with the treatise. While this may be so, Beasley was not prejudiced by this omission since Whittington readily acknowledged existence of the theory in question and stated his disagreement with that theory on redirect examination.

■ Since Beasley is correct that the trial court should have informed the jurors of the effect of the verdict of not guilty by reason of insanity, on retrial, the trial court, upon request, should instruct the jury on commitment procedures in accordance with *People v. Thomson*, Colo., 591 P.2d 1031 (1979).

## II.

### *The Trial on the Not Guilty Plea*

Beasley challenges his conviction in the trial of the substantive charges alleging that the trial court erred in failing to instruct the jury on the limited purpose of evidence of his other criminal activities and in denying his motion to suppress the in-court identification by the female victim. Again, we reverse.

■ The court admitted evidence showing that sometime prior to the kidnapping and shooting, Beasley, while in possession of a weapon, had threatened to kill Jordan. The trial court refused the limiting instruction tendered by defense counsel regarding this evidence, *see Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), and Beasley contends that this was reversible error.

■ Evidence of other crimes is inadmissible unless it is offered for the purpose of proving scheme, plan, intent, or design. *People v. Ihme*, 187 Colo. 48, 528 P.2d 380 (1974); *see* Colorado Rules of Evidence (CRE) 404(b) (effective January 1, 1980). However, where evidence of other crimes is admitted under one of the exceptions, the trial court is required to give cautionary instructions limiting the purpose of the evidence. *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973); 1 *Wharton's Criminal Evidence* § 264 (13th ed. 1972); *see People v. Pacheco*, 191 Colo. 499, 553 P.2d 817 (1976). Consequently, while the evidence of threats and weapon possession were admissible to show intent, the trial court should have given a limiting instruction. *See People v. Pacheco, supra.*

■ Beasley finally argues that the trial court erred in allowing the female victim to testify to her prior out-of-court photo identification of him and to identify Beasley in court without establishing an adequate independent basis for that identi-

fication. On retrial, the trial court must determine whether, in the totality of the circumstances, the confrontation (here the photo identification) was so unnecessarily suggestive and conducive to irreparable mistaken identity that it should be excluded. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969). Further, it must find that any in-court identification which follows a suggestive out-of-court procedure was the product of the witness' own recollection. In so doing, the trial court should make findings as prescribed in *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978).

The judgment of sanity at the time of the commission of the crime is reversed and the cause is remanded for a new sanity trial. The judgment of conviction is also reversed and the cause is remanded for a new trial.

COYTE and SILVERSTEIN, JJ., concur.